# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| T. MICAH DORTCH | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00452 |
| | § | Judge Mazzant |
| WELLS FARGO BANK, N.A. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Special Receiver Timothy Micah Dortch's ("Special Receiver") Motion to Compel Documents from Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (Dkt. #56). Having considered the motion and the relevant pleadings, the Court finds that Special Receiver's Motion should be granted in part and denied in part. Specifically, the motion should be granted as to Requests Nos. 3 and 4 and denied as to Requests Nos. 1, 2, and 10. In addition, the Court orders Wells Fargo to supplement its response to Request No. 11.

## BACKGROUND

This case concerns Wells Fargo's alleged role in the Ponzi scheme (the "Ponzi Scheme") perpetuated by Thurman P. Bryant and Arthur F. Wammel and their respective companies[1] (collectively, the "Bryant and Wammel Defendants"). Specifically, Special Receiver alleged that Wells Fargo breached its fiduciary duties to its accountholders by not abiding by industry standards and its own rules regarding fraudulent transfers, thereby allowing the Ponzi Scheme to continue (Dkt. #1).

On September 7, 2018, the Court issued the Order Governing Proceedings (Dkt. #10). In the Order, the Court instructed the parties to produce "[a] copy of all documents, electronically

---
[1] Special Receiver is the court-appointed receiver for Thurman P. Bryant and Bryant United Capital Funding, Inc. (collectively, the "Bryant Defendants"); and Arthur F. Wammel, Wammel Group, LLC, and Wammel Group Holdings Partnership (collectively, the "Wammel Defendants") (Dkt. #1 at p. 1).

stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #10). Such production was to be accomplished not later than 10 days after the deadline for the Rule 26(f) conference (Dkt. #10). The Order, pursuant to Local Rule CV-26(d), defined "relevant" as including:

> (1) information that would not support the disclosing parties' contentions; (2) those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) information that is likely to have an influence on or affect the outcome of a claim or defense; (4) information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and (5) information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense

LOCAL RULE CV-26(d). The Court then entered its Scheduling Order (Dkt. #25) on November 2, 2018. In the Scheduling Order, the Court stated:

> If the parties are unable to resolve the dispute without court intervention, the parties must then call the Court's chambers to schedule a telephone conference regarding the subject matter of the dispute prior to filing any motion to compel. After reviewing the dispute, the Court will resolve the dispute, order the parties to file an appropriate motion, or direct the parties to call the discovery hotline

(Dkt. #25).

On November 1, 2019, Wells Fargo submitted its Response to Special Receiver's First Request for Production. Wells Fargo responded and argued that many of the Special Receiver's Requests for Production were, among other things, overly broad, irrelevant, disproportional, and unduly burdensome (Dkt. #56, Exhibit 1). Consequently, the parties, pursuant to the Court's Preliminary Scheduling Order, sought a telephone conference with the Court (Dkt. #25). The telephone conference occurred on December 2, 2019. At the conference, the Court authorized the Special Receiver to file a motion to compel, if necessary. Consequently, the Special Receiver filed

his Motion to Compel Documents from Wells Fargo (Dkt. #56), which Wells Fargo opposes (Dkt. #61). The Requests for Production that are in dispute ask the following:

- *Request No. 1*. Produce a copy of Wells Fargo's policies and procedures.
- *Request No. 2*. Produce a copy of the Bank Secrecy Act (herein, "BSA") and USA PATRIOT Act policies and procedures, including the Know Your Customer, Customer Identification Program, Due diligence and enhanced due diligence, Account monitoring, CTRs, Cashier's checks, and Wire transfers.
- *Request No. 3*. Produce a copy of the protocols and/or policies and procedures for the BSA analysts to follow when reviewing BSA alerts.
- *Request No. 4*. Produce a copy of the protocols and/or policies and procedures for the fraud analysts to follow when reviewing fraud alerts.
- *Request No. 10*. Produce a copy of any alerts generated by the BSA and fraud detection automated account monitoring systems for the pertinent deposit accounts in this litigation.
- *Request No. 11*. Produce a copy of any investigations of alerts generated by the BSA and fraud detection automated account monitoring systems for the pertinent deposit accounts in this litigation. To further specify, Plaintiff is not requesting any Suspicious Activity Reports (SARs).

(Dkt. #56, Exhibit 1).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #12 at p. 2). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense . . . ." LOCAL RULE CV-26(d). It is well established that

"control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule

"simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1) advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.* The moving party "may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 592 (N.D. Tex. 2017).

**ANALYSIS**

Special Receiver seeks information related to Wells Fargo's monitoring systems and administration of the accounts related to the Ponzi Scheme. According to the parties, the requests fall into three categories: (1) BSA Policies and Procedures (Requests Nos. 1 and 3); (2) Account Monitoring Protocols (Requests Nos. 2 and 4); and (3) Alerts and Investigations (Requests Nos. 10 and 11). Before the Court proceeds to each of the three categories, the Court will first address Wells Fargo's General Objections and Responses (Dkt. #56, Exhibit 1 at p. 3).

## I. General Objections and Responses

In order to satisfy its burden, a party objecting to discovery "must make a specific, detailed showing of how a request is burdensome [or overbroad]." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (citing *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000)). To that end, "[a] mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511–12 (N.D. La. 2000)). Summary objections are rejected because "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *Id.* (citing *Harding v. Dana Transp. Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996)). Thus, "[a] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (citing *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004)); *see also McLoed, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (holding that merely objecting that a request is "overly broad, burdensome, oppressive and irrelevant"—without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive"—is inadequate to "voice a successful objection").

A party may also "properly raise and preserve an objection to production of documents in response to a specific document request or interrogatory by objecting 'to the extent' that the request[] seeks privileged materials or work product, so long as the responding party also provides the information required by Rule 26(b)(5)(A)." *Heller v. City of Dall.*, 303 F.R.D. 466, 486 (N.D. Tex. 2014)). "The party asserting the attorney-client privilege bears the burden of showing how

each document satisfies the elements of the privilege." *United States v. Davita, Inc.*, No. 1:05-CV-227, 2011 WL 13077087, at *1 (E.D. Tex. Nov. 28, 2011) (citing *Ferko v. Nat'l Assoc. for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985))). "Likewise, the party asserting work-product protection bears the burden of proving that discovery materials warrant such protection." *Id.* (citing *Ferko*, 218 F.R.D. at 136). Once a party properly objects to the discovery request, the party seeking to compel discovery must then "address each objection raised by [the objecting party] and show why each discovery request is relevant to his claims." *Johnson v. Tune*, No. 4:10-CV-124, 2011 WL 13196545, at *1 (E.D. Tex. Jan. 25, 2011).

At the outset, the Court notes that Wells Fargo has proffered objections which it seeks to incorporate into each of its answers and responses. Wells Fargo generally objects:

> [T]o the extent that the information and/or documents sought: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions conclusion, opinions, or legal theories of any attorney for or other representative of Wells Fargo; (e) are privileged under the SAR privilege or the bank examination privilege, or (f) are otherwise privileged or exempt from discovery

(Dkt. #56, Exhibit 1 at p. 3). Where, as here, there are general, boilerplate objections, those objections "do not 'state with specificity the grounds for objecting to the request.'" *Star Creek Ctr., LLC v. Seneca Ins. Co., Inc.*, No. 4:17-CV-00607, 2018 WL 1934084, at *3 (E.D. Tex. Apr. 23, 2018) (citing FED. R. CIV. P. 34(B)(2)(B)); *see also Boilerplate*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th ed. 2007) (defining "boilerplate" as meaning "standardized text" or "ready-made or all-purpose language"); *Boilerplate*, BLACK'S LAW DICTIONARY (10th ed. 2014) (same). Thus, Wells Fargo's general objections relating to attorney-client privilege, work product, SAR privilege, and the like are insufficient without more. *See Davita*, 2011 WL 13077087, at *1;

7

*Ferko*, 218 F.R.D. at 136. Consequently, because Wells Fargo's boilerplate objections fail to comply with the Federal Rules, its general objections and responses, which precede its specific objections, are all waived as insufficient. *See Star Creek Ctr.*, 2018 WL 1934084, at *2 (citing FED. R. CIV. P. 33(b)(4)).

With this preliminary matter addressed, the Court now turns to each of the three disputed categories of discovery.

## II. BSA Policies and Procedures

The first disputed category—BSA Policies and Procedures—concerns Requests Nos. 1 and 3. The Court discusses each request in turn, finding that Request No. 1 is denied and Request No. 3 is granted.

### A. Request No. 1

Request No. 1 states as follows:

- *Request No. 1.* Produce a copy of Wells Fargo's policies and procedures.

(Dkt. #56, Exhibit 1 at p. 4).

Wells Fargo objects to Request No. 1 as being, among other things, not relevant and overly broad because Special Receiver (1) "fails to specify what policies and procedures it seeks with sufficient particularity"; and (2) "fails to limit the request to policies and procedures applicable to accounts belonging to the [Bryant and Wammel] Defendants" (Dkt. #56, Exhibit 1 at p. 4). Here, the Court finds that Wells Fargo's objections for irrelevancy and overbreadth are valid.

To avoid discovery, Wells Fargo needed to "show specifically how . . . each [request] is not relevant . . . or overly broad." *McLeod, Alexander, Powel & Apffel, P.C.*, 894 F.2d at 1485. Wells Fargo did just that, establishing that Special Receiver's request for Wells Fargo's policies and procedures was not specific and requested a litany of documents that are not relevant to the

case here. Accordingly, because this request is irrelevant and overbroad, the Court denies Special Receiver's motion to compel as to Request No. 1.[2]

### B. Request No. 3

Request No. 3 asks:

- *Request No. 3.* Produce a copy of the protocols and/or policies and procedures for the BSA analysts to follow when reviewing BSA alerts.

(Dkt. #56, Exhibit 1 at p. 5)

Notably, Wells Fargo has already produced some documents that are responsive to this request (Dkt. #61 at p. 3). While Wells Fargo has produced some responsive documents, it still maintains its various objections to Request No. 3. Specifically, Wells Fargo states that the request is "broad, vague, and ambiguous" because Special Receiver failed to (1) define "protocols," "policies," and "procedures," and (2) limit the request to those policies applicable to accounts belonging to the Bryant and Wammel Defendants (Dkt. #56, Exhibit 1 at p. 5). Wells Fargo further objects to Request No. 3 because it seeks trade secret information. In addition, Wells Fargo objects to the request to the extent it seeks documents protected by work product, attorney-client, CSI, or SAR privilege (Dkt. #56, Exhibit 1 at p. 5).

As an initial matter, Special Receiver has met his burden to show that he requests documents that are relevant. *See Exp. Worldwide, Ltd.*, 241 F.R.D. at 263. In particular, BSA policies and procedures are relevant because this suit alleges that Wells Fargo breached its duties to its accountholders by failing to abide by the BSA on the transactions made by the Bryant and Wammel Defendants. Thus, the procedures Wells Fargo implemented to ensure compliance under the BSA are relevant in this case.

---

[2] While the Court denies Request No. 1 for being irrelevant and overbroad, Special Receiver may still narrow his request to fit within the confines of Federal Rule 26. *See* FED. R. CIV. P. 26(b)(1) (stating that the parties may obtain discovery "that is relevant to any party's claim or defense and proportional to the needs of the case").

As Special Receiver met his burden, the burden shifts to Wells Fargo to show why the discovery is prohibited. *See id*. Here, the Court is not convinced that Request No. 3 is overly broad, vague, or ambiguous because the request is described with reasonable particularity and is limited in scope to BSA alerts and the procedures used to investigate them. *See United States v. Nat'l Steel Corp*., 26 F.R.D. 607, 610 (S.D. Tex. 1960) (stating that a reasonably particular description should indicate to a person "of ordinary intelligence which documents are required.")

Furthermore, the Court is not convinced that any documents responsive to this request are protected because they contain trade secrets. "When trade secret privilege is asserted as the basis for resisting production, 'the party resisting discovery must establish that the information sought is indeed a trade secret and that disclosure would be harmful.'" *Lackey v. Dement*, No. SA-17-CV-00514-FB, 2009 WL 3238896, at *6 (W.D. Tex. July 18, 2019) (citing *In re Cont'l Gen. Tire, Inc*., 979 S.W.2d 609, 612 (Tex. 1998)). Although Wells Fargo describes why its automated monitoring system should be considered a trade secret, it wholly fails to state why its BSA policies should be protected (Dkt. #61 at p. 11; Dkt. #62 ¶ 16). Thus, Wells Fargo has not established that the information sought in Request No. 3 is "indeed a trade secret." *See id*.

As a result, the Court grants Special Receiver's motion to compel as to Request No. 3 to the extent that responsive documents have not already been produced. Should Wells Fargo claim that any remaining undisclosed documents are privileged, Wells Fargo must file a privilege log describing the information in accordance with Federal Rule of Civil Procedure 26(b)(5). *See United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 10311, at *4 (stating that "[b]lanket assertions of privilege are unacceptable, as the Court and other parties must be able to test the merits of a privilege claim") (citations omitted).

### III. Account Monitoring Protocols

The second disputed category—Account Monitoring Protocols—concerns Requests Nos. 2 and 4. The Court will discuss each request in turn, ultimately denying Request No. 2 and granting Request No. 4.

#### A. Request No. 2

Request No. 2 states as follows:

- *Request No. 2.* Produce a copy of the Bank Secrecy Act (herein, "BSA") and USA PATRIOT Act policies and procedures, including the Know Your Customer, Customer Identification Program, Due diligence and enhanced due diligence, Account monitoring, CTRs, Cashier's checks, and Wire transfers.

(Dkt. #56, Exhibit 1 at p. 4).

Wells Fargo asserts that Request No. 2 "seeks policies and procedures for account monitoring, which Wells Fargo has confirmed do not exist" (Dkt. #61 at p. 8) (emphasis omitted). Instead, according to Wells Fargo, it uses a complex account monitoring system, which cannot be simplified into a set of policies or procedures (Dkt. #61 at pp. 4, 8). As Wells Fargo explains, the account monitoring system "uses over 100 highly proprietary and complex channels," and "[e]ach channel uses multiple algorithms and risk factors to generate alerts" (Dkt. #62 ¶ 3). Once an alert is generated, then "Wells Fargo will investigate further using specialized investigators" (Dkt. #62 at p. 5 ¶ 3).

Wells Fargo objects to Request No. 2 as being overbroad and unduly burdensome (Dkt. #61 at pp. 9–10). This is because, Wells Fargo claims, it seeks thousands of documents, which are highly technical and relate to algorithms that have changed during the twelve years since the transactions at issue were made (Dkt. #61 at p. 10). Special Receiver claims that it is not seeking any algorithms; rather, "Special Receiver seeks the account monitoring *protocols* and *procedures*

11

which analysts would use or refer to in their investigation" (Dkt. #56 at p. 11) (emphasis in original).

Limiting this request to exclude Wells Fargo's algorithms, the Court denies Special Receiver's motion to compel as to Request No. 2 based on Wells Fargo's representation that no responsive documents exist as to policies and procedures (Dkt. #61 at p. 8). *See, e.g.*, *United States ex rel. Ramadoss v. Caremark Rx, Inc.*, No. SA 99CA0914WRF, 2013 WL 12203241, at *3 (W.D. Tex. Jan. 4, 2013) (stating that "[i]f there are no responsive documents, then none can be compelled")

### B. Request No. 4

In Request No. 4, Special Receiver asks:

- *Request No. 4*. Produce a copy of the protocols and/or policies and procedures for the fraud analysts to follow when reviewing fraud alerts.

(Dkt. #56, Exhibit 1 at p. 6).

This request is nearly identical to Request No. 3, except that it seeks policies and procedures for fraud analysts rather than BSA analysts (Dkt. #61 at p. 17; Dkt. #56, Exhibit 1 at pp. 5–6). Wells Fargo's objections to both requests are likewise similar. Thus, the Court's discussion of Request No. 4 will largely echo that of Request No. 3.

Here, Wells Fargo objects to Request No. 4 on multiple grounds. Specifically, Wells Fargo states that the objection is "broad and vague" because Special Receiver failed to (1) define "protocols," "policies," and "procedures," and (2) limit the request to those policies applicable to accounts belonging to the Bryant and Wammel Defendants (Dkt. #56 at p. 6). Wells Fargo also objects to Request No. 3 because it seeks trade secret information. Furthermore, Wells Fargo objects to the request to the extent it seeks documents protected by work product, attorney-client, CSI, or SAR privilege (Dkt. #56, Exhibit 1 at p. 5).

Once again, Special Receiver has met his burden to show that he requests documents that are relevant. *See Exp. Worldwide, Ltd.*, 241 F.R.D. at 263. In particular, the fraud analysts' policies used in reviewing fraud alerts are relevant because this suit alleges that Wells Fargo breached duties to its accountholders due to its failure to abide by banking laws and its "mismanagement or misapplication of [its] own fraud monitoring systems" (Dkt. #56 at p. 7). Thus, the procedures fraud analysts were supposed to follow when reviewing fraud alerts are relevant in this case.

As Special Receiver met his burden, it is now Wells Fargo's burden to show why the discovery is prohibited. *See id*. Again here, the Court is not convinced that Request No. 4 is overly broad and vague because the Court finds that the request is described with reasonable particularity and is limited in scope to fraud alerts and the procedures fraud analysts use to investigate them. *See Nat'l Steel Corp.*, 26 F.R.D. at 610 (stating that a reasonably particular description should indicate to a person "of ordinary intelligence which documents are required.")

The Court is also not convinced that any documents responsive to this request are protected because they contain trade secrets. As previously stated, Wells Fargo, as "the party resisting discovery," must have established that the information sought is a trade secret and that its disclosure would be harmful. *Lackey*, 2009 WL 3238896, at *6 (citing *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 612). With the exclusion of Wells Fargo's account monitoring algorithms—which Special Receiver does not seek, Wells Fargo failed to state why the policies for fraud analysts are protected trade secrets. *See* (Dkt. #56 at p. 11; Dkt. #61). Thus, Wells Fargo has not established that the information sought in Request No. 4 is a trade secret. *See id*.

The Court therefore grants Special Receiver's motion to compel as to Request No. 4 to the extent that responsive documents have not already been produced. However, based on Special

Receiver's clarification, the Court does not compel Wells Fargo to produce the algorithms it uses for its account monitoring system. Nevertheless, if Wells Fargo claims that any remaining undisclosed documents are privileged, Wells Fargo must file a privilege log describing the information according to Rule 26(b)(5). *See Ocwen Loan Servicing, LLC*, 2016 WL 10311, at *4 (stating that "[b]lanket assertions of privilege are unacceptable") (citations omitted).

### IV. Alert and Investigations

The final disputed category—Alerts and Investigations—concerns Requests Nos. 10 and 11. The Court discusses each in turn, concluding that Request No. 10 is denied and that Request No. 11 must be supplemented by Wells Fargo.

#### A. Request No. 10

Request No. 10 states the following:

- *Request No. 10.* Produce a copy of any alerts generated by the BSA and fraud detection automated account monitoring systems for the pertinent deposit accounts in this litigation.

(Dkt. #56, Exhibit 1 at p. 10).

In its response to Request No. 10, Wells Fargo states that it "has not located any relevant, non-privileged documents responsive to this request" (Dkt. #56, Exhibit 1 at p. 10). Wells Fargo further states that there were no alerts were generated on the transactions at issue in this litigation (Dkt. #61 at p. 3; Dkt. #61 at p. 6 ¶ 6). Based on Wells Fargo's representations that there were no responsive documents, the Court denies Special Receiver's motion to compel as to Request No. 10. *See, e.g.*, *United States ex rel. Ramadoss*, 2013 WL 12203241, at *3 (stating that "[i]f there are no responsive documents, then none can be compelled")

14

### B. Request No. 11

Request No. 11 asks:

- *Request No. 11.* Produce a copy of any investigations of alerts generated by the BSA and fraud detection automated account monitoring systems for the pertinent deposit accounts in this litigation. To further specify, Plaintiff is not requesting any Suspicious Activity Reports (SARs).

(Dkt. #56, Exhibit 1 at p. 10).

Wells Fargo objects to Request No. 11 on the grounds that the request's terms—"investigations," "alerts," and "pertinent deposit accounts in this litigation"—are ambiguous, broad, and vague (Dkt. #56, Exhibit 1 at p. 10). Wells Fargo further objects to the extent Special Receiver seeks information that is protected by work product, attorney-client, CSI, or SAR privilege (Dkt. #56, Exhibit 1 at p. 10). Based on this, Wells Fargo asserts that "no production is necessary" (Dkt. #61 at p. 11).

It is unclear to the Court whether Wells Fargo has documents that are responsive to this request. On the one hand, Wells Fargo stated in its response that there were no investigations of alerts because there were not any alerts generated (Dkt. #61 at pp. 12–13); *see also* (Dkt. #62 at p. 6 ¶ 6) (stating that because there were no alerts generated, "the investigators could not have, and in fact did not, conduct any investigations based upon such alerts"). On the other hand, Wells Fargo did not specify in its objections that no responsive documents exist. *See Heller*, 303 F.R.D. at 486 (stating that "if no responsive documents or tangible things exist, . . . the responding party should so state . . . .") (citations omitted). Consequently, while the Court cannot compel documents that do not exist, the Court orders Wells Fargo to supplement its response to Request No. 11 to clarify whether there are any documents responsive to this request. *See Faykus-Orr v. Liberty Life Assurance Co. of Bos.*, No. 3-06-CV-0750-D, 2006 WL 3734213, at *3 (N.D. Tex. Dec. 18, 2006)

(ordering the defendant to supplement its response due to confusion about whether documents exist).

To the extent there are responsive documents, such non-privileged documents must be produced because the Court finds that Wells Fargo's objections are unpersuasive. First, the Court is not convinced that Request No. 11 is ambiguous, broad, and vague. Rather, the Court finds that the description indicates to a person of "ordinary intelligence which documents are required"—investigation information from fraud alerts generated by the accounts of the Bryant and Wammel Defendants. *Nat'l Steel Corp.*, 26 F.R.D. at 610. Second, while Wells Fargo objected to the request to the extent it sought privileged documents, it failed to produce a privilege log as required by Rule 26(b)(5). *See Heller*, 303 F.R.D. at 486 (stating that a party may object to a request to the extent it seeks privileged work "so long as the responding party also provides the information required by Rule 26(b)(5)(A)"). Thus, to the extent that there are non-privileged responsive documents, Wells Fargo is ordered to produce them. But, if Wells Fargo claims that any responsive documents are privileged, Wells Fargo must file a privilege log in accordance with Rule 26(b)(5). *See Ocwen Loan Servicing, LLC*, 2016 WL 10311, at *4 (stating that "[b]lanket assertions of privilege are unacceptable") (citations omitted).

## CONCLUSION

It is therefore **ORDERED** that Special Receiver's Motion to Compel Documents from Defendant Wells Fargo Bank, N.A. (Dkt. #56) is hereby **GRANTED** as to Requests No. 3 and 4 and **DENIED** as to Requests Nos. 1, 2, and 10. It is further **ORDERED** that Wells Fargo must supplement its response to Request No. 11 within 7 days of the filing of this order.

**SIGNED this 18th day of March, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE